UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# Filed

DEC 1 0 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

Rhawn Joseph, pro se
677 Elm St.
San Jose, CA 95126
408-286-9833

Case Number:

COMPLAINT **CV12 – 6256** HRL

DEMAND FOR JURY TRIAL

---

Rhawn Joseph, Ph.D
Plaintiff
Pro Se

vs.

Amazon.com, Inc., Jeffrey P. Bezos,
Defendants

---

)
)
)
)
)
)
)
)
)
)
)
)

COMPLAINT FOR VIOLATION OF
SHERMAN ANTITRUST ACT,
LIBEL, SLANDER, DEFAMATION,
TRADE LIBEL, BREACH OF CONTRACT,
MALICE, FRAUD, PERSONAL INJURY,
DAMAGES, INJUNCTIVE RELIEF

Amazon.com, Inc.
PO Box 81226
Seattle, WA 98108-1226
206-266-4064

1.     Plaintiff, Rhawn Joseph, Ph.D., an author and publisher, acting on his own behalf, brings

suit against Defendants Amazon.com, Inc. ("Amazon", or "Amazon.com")  and Jeffery P. Bezos ("Bezos")

President, Chief Executive Officer and Chairman of the Board of Amazon.com,  to obtain injunctive and

monetary relief for defamation, libel, trade libel, slander, malice, fraud, oppression, personal injury,

breach of contract, and anti-competitive antitrust actions including violation of the Sherman Antitrust Act,

15 U.S.C.

2.     Plaintiff's allegations as set forth below are based upon the personal knowledge of

Plaintiff, and on allegations stated as being "on information" and "on belief," and those based upon

investigation by Plaintiff and on Plaintiff's conclusions based on knowledge, information, investigation,

and belief. Exhibits in support of these allegations will be provided to the Court.

**INTRODUCTION**

    3.     Plaintiff is an author and science book publisher whose publishing company has published the works of hundreds of scientists,  and whose book publishing company relies on "print on demand technology"  in which copies of a book are only printed when an order has been received from a consumer or retail bookseller. Plaintiff relies on a company known as LightningSource to print Plaintiff's POD books.

    4.     Print on demand (POD) books are a cost effective means of book production as there is no need to maintain storage facilities or large (expensive) inventories and books can be printed when orders are received. POD books are predominantly sold over the internet and through online bookstores.

    5.     Amazon is widely recognized as being the largest online (internet) retailer in the world and markets itself as having "Earth's Biggest Selection." Amazon also claims to outsell all other bookstores including brick and mortar bookstore chains. Amazon is estimated to control 70% of the retail market for book sales. Amazon, as a book seller, therefore has tremendous economic power and is a monopoly.

    6.     Amazon is also a book publisher (i.e. Kindle E-Books, CreateSpace, Amazon Publishing), and a printer of books and uses its own POD technology and owns a POD printing house, "BookSurge," (a subsidiary of Amazon). Amazon, therefore, not only sells the books of its competitors, but e-books, soft-back books, and hardback books which are published by Amazon. Amazon publishing includes 7 different companies (imprints) and has made deals with at least two major publishers to distribute Amazon's books to brick and mortar book stores. Therefore,  Amazon is in direct competition with other publishers and authors who have not agreed to publishing or printing contracts with Amazon.

**I. Amazon Monopoly Damages Print-on-Demand Authors & Publishers**

    7.     Amazon employs illegal and unfair business practices, and its economic, market, and monopolistic power,  to harass, threaten, coerce or force Plaintiff and other authors to print of publish only with Amazon; to force Plaintiff and other authors and POD publishers to sell directly to Amazon at a

substantial discount; to coerce or force Plaintiff and other authors and POD publishers to use Amazon's POD printing services; and to damage, libel and defame competitors and independent authors and publishers including Plaintiff. Amazon's long term goal is to force Plaintiff and others of this Class to do business only with Amazon according to Amazon's dictatorial and unfair terms, and has damaged and will damage and cause them great injury so as to force Plaintiff and others of this Class out of business or to greatly damage their business if they refuse.   Amazon has unreasonably restrained trade and has sought to restrain trade, and this is unlawful per se and a violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

   8.    Plaintiff has been directly damaged by Amazon's illegal business practices. Amazon has refused to directly sell books authored or published by the Plaintiff (Exhibits to be provided to the Court) despite demand for these books; has falsely claimed that books published by Plaintiff are "out of print" when they are not;  has falsely claimed Plaintiff's books are not available and can only be shipped after "1 to 3 weeks" or "3 to 6 weeks"; has threatened Plaintiff for publishing books authored and published by Plaintiff warning that all Plaintiff's books will be removed from sale (Exhibits to be offered as evidence); and has publish defamatory attacks on Plaintiff and about Plaintiff's website (Exhibits to be provided to Court), and on authors who are not under contract to Amazon while simultaneously deleting positive reviews or statements of fact about Plaintiff's books. Amazon and Amazon CEO Bezos have a 5 year history of targeting, threatening, harassing and damaging Plaintiff.

   9.    Upon information and belief, beginning in 2008, Amazon notified POD publishes and authors, including Plaintiff, that Amazon would only directly sell to consumers POD books that were printed by Amazon's printing outlet, BookSurge. On March 31, 2008, Amazon issued an "Open letter to interested parties" publicly and explicitly stating that Amazon would penalize authors and publishers who refused to have their books printed through BookSurge and would stop selling or dramatically reduce the sales of books printed by other POD printers. Subsequently, Amazon interfered with and dramatically reduced the sales of Plaintiff's books and refused to sell books authored by Plaintiff.

10.    Case in point: When Plaintiff's published the 4th edition of Plaintiff's highly acclaimed neuroscience scholarly text "Neuroscience," Amazon's internet web address offering Plaintiff's book began receiving thousands of visitors a day. Amazon reacted by falsely claiming Plaintiff's book was out of print, and then refused to stock or directly sell the book (Exhibits to be provided as evidence).

11.    Amazon's practice of threatening, interfering with, making false statements about the availability of, and refusing to directly sell the books of the Plaintiff and other authors and publishers who use independent POD printing services,  and Amazon's threats that their books sales will be harmed if they refuse to use BookSurge's printing services, and this is a violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.  and constitutes an illegal tying arrangement that has caused, and will continue to cause, damage to Plaintiff and the Class.

12.    Amazon's unlawful tying arrangement seeks to prevent or punish POD authors and publishers for selecting more competitive POD printing services which are not as expensive as BookSurge or CreateSpace and which print better quality books. Amazon's business practices constitute an unlawful attempt to coerce and force the Plaintiff and other authors and independent publishers to use only BookSurge's or CreateSpace printing services despite the higher cost and the inferior books printed by these Amazon companies.

13.    Plaintiff's highly acclaimed text  and other books Amazon refuses to directly sell, are POD books printed by Lightingsource, the same POD printer who prints books for thousands of other publishers who sell or who attempt to sell books through Amazon; a practice Amazon is seeking to prevent.

14.    Amazon's practice of punishing and damaging Plaintiff and other authors and publishers is selective and malicious. Amazon's strategy is to target and slowly kill off small publishers such as the Plaintiff, and is reluctant to force its will on all publishers for fear that customers will seek these books from competing book sellers whom Amazon has not yet driven out of business. Thus, Amazon's false claims about the availability of Plaintiff's and other authors' POD books is selective and has nothing to do

4

with the actual availability of these books but represents Amazon's business practices of deceit and dishonesty. Specifically, Amazon typically claims it has copies of POD books in stock when it does not, as these books have not been printed.  Thus, Amazon will state it has (for example) "only 4 copies left, more on the way" when in fact Amazon sends customer's orders to its own POD printer or to a POD publisher's printer such as Lightning Source who then prints and ships the book for Amazon. For example, when a customer orders a POD book which Amazon claims is in stock, Amazon sends the order to BookSurge or Lightning Source who then prints and ships the books directly to Amazon's customers using an Amazon label.  Thus, when Amazon claims a POD book is not available or cannot be shipped for "3 to 6 weeks" or refuses to directly sell the book, these claims have nothing to do with the actual availability of the book but represents Amazon's policy of selectively targeting independent authors and publishers including the Plaintiff.

15.    As stated, Amazon has warned independent authors and small publishers, including the Plaintiff, that Amazon will dramatically reduce the sales of or will refuse to order books from their POD printers, and Amazon has acted on these threats.

16.    Plaintiff is an independent author and a small POD publisher who sells approximately 800 books a month and who has published the works of hundreds of scientists. Amazon, therefore, as a book publisher and printing service is in competition with Plaintiff, and has maliciously targeted and caused harm to the Plaintiff as punishment for not using Amazon's BookSurge POD printing service and other services such as "Amazon Advantage."  Other members of this Class have been injured by Amazon in a similar fashion.

## II. The "Amazon Advantage" Monopoly Damages Authors & Publishers

17.    Amazon also coerces and seeks to force authors and independent publishers, including Plaintiff, to sell their books directly to Amazon at a significant discount and to pay for all shipping charges, or Amazon will refuse and has refused to directly sell their books and Plaintiff's books to the public. Thus, the only way Amazon will guarantee that Amazon will directly offer Plaintiff's POD books for

5

sale is via an unfair program called "Amazon Advantage."

18.     The Amazon Advantage program mandates that Plaintiff and other POD publishers/ authors use Amazon's shipping notice and official invoice when shipping books to Amazon, and this requires that books be shipped first from the POD printer to the Plaintiff and then shipped by the Plaintiff to Amazon (with the official Amazon shipping notice and invoice attached), thereby forcing Plaintiff (and other POD authors/publishers) to pay twice for shipping charges, i.e. from the POD printer to Plaintiff and from Plaintiff to Amazon. The alternative is for Plaintiff (and other POD authors/publishers) to pay handling costs to the POD printer which is expensive and cost prohibitive. Specifically,  Plaintiff must provide the POD printer with Amazon's official shipping form and official invoice, and the POD printer must open the shipping container and insert the invoice and then attach Amazon's official shipping form, and then reseal the box and then ship it, all of which directly interferes with the low cost automated way POD printing and shipping normally occurs. Plaintiff and other POD Authors/publishers must also agree to give Amazon a 55% discount off the retail price.  By forcing and coercing Plaintiff (and other authors/ publishers) to participate in Amazon Advantage program, Plaintiff is forced to sell books at a loss or minimum profit. For example, Plaintiff's book "Head Injuries" which sells for $17.00 costs the Plaintiff 47% to print and ship to customers and retailers ($8.05). Under Amazon Advantage Plaintiff would have to pay up to a 20% ($3.00) handling charge for manually inserting and attaching Amazon's invoice/ shipping form, 22% to ship to the Plaintiff ($3.80), another 22% for Plaintiff to ship to Amazon ($3.80), which comes to $14.95. Amazon also demands a 55% discount ($9.35) which in addition to the costs already numerated comes to a total of $24.30 leaving the Plaintiff with a loss of $7.30.  However, Amazon also refuses to pay for books shipped to Amazon until the books have been sold to a third party, and thus the Amazon Advantage program requires that Plaintiff (and other authors/publishers) provide Amazon with these books at a loss or with minimal profit.

19.     If the Plaintiff or other independent POD publishers and authors refuse to use Amazon's POD BookSurge or the Amazon Advantage program, Amazon can and will refuse to directly sell their

books, will dramatically reduce the sales of these books, and will claim books can't be shipped for up to "6 weeks." Plaintiff and other members of this Class, have been profoundly injured by Amazon's illegal business practices which are a violation of the Sherman Act and constitutes an illegal tying arrangement that has caused, and will continue to cause damage to Plaintiff and the Class.

### III. "Amazon Marketplace" Damages Authors and Publishers

20.     The only remaining option for Plaintiff and other independent POD publishers and authors when trying to sell books through Amazon, is to enroll in "Amazon Marketplace." For a fee and percentage of the sales, the Amazon Marketplace program allows authors, independent publishers, independent vendors and private parties, to indirectly sell books indirectly to the public, on a webpage separate from the main Amazon page listing the book in question. Based on knowledge and belief, only a small fraction of book sales are effectuated through the "Amazon Marketplace" and this is because Amazon customers prefer to buy from Amazon. More specifically, customers are concerned about the honesty and integrity of these private vendors and book sellers about whom Amazon provides almost no information;  customers are concerned about privacy and the security of their credit card, email address, and personal information, and are naturally reluctant to provide it to third parties about whom there is little information provided; customers are concerned about the quality and condition of the books sold by private vendors and are concerned they may not receive the book as they are dealing with an unknown vendor where there is almost no identifying information provided by Amazon. In addition, whereas Amazon offers free shipping programs this option is not available through "Amazon Marketplace."

### IV. Amazon Libels and Defames Plaintiff & Independent Authors & Publishers

21.     Amazon also uses its monopoly and other unfair business practices to defame and libel the Plaintiff and other independent authors and independent publishers,  and regularly publishes and copyrights defamatory and libelous statements about competitors including Plaintiff. Amazon freely commits these civil and criminal offenses with impunity because of a 2001 case where the court ruled that Amazon's defamatory practices are protected and sanctioned by Section 230 of the

Communications Decency Act ("CDA"). However, that 2001 ruling is no longer applicable as Amazon copyrights, owns, and has sole responsibility for this defamatory content.

22.    Specifically, in the case of Schneider v. Amazon.com, Inc. (Case No. 46791-3-I, 31 P.3d 37 ; Wash. Ct. App., September 17, 2001)  a plaintiff (Schneider) filed suit because of negative, defamatory statements posted by third parties on Amazon.com's web site, and because Amazon refused to remove these libelous statements despite the fact these defamation violated Amazon's guidelines governing such postings.  However, the Court ruled that Section 230 of the Communications Decency Act ("CDA") immunized Amazon.com because Section 230 of the CDA states that "no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  The Court held that Amazon was providing a service little different from a community messenger board where private parties can post messages to each other and the CDA offered protection under this statute.  Thus, in 2001, according to the Court,  Amazon was a neutral provider of "interactive computer services", had no competitive or other interest pro or con in the posting of these defamatory statements, and operated a web site and messenger board on which third parties could post comments to each other.  Second, the content in question was the property of these third parties and not Amazon and for which Amazon had no legal responsibility and no claim of ownership.  And lastly, according to this 2001 ruling, Amazon was immunized from Schneider's claims because each premised Amazon's liability on its failure to remove offending content originated by others and which was the property of others, and that the failure to remove this material was because of Amazon's neutral role as a community messenger board and thus was based on Amazon's desire to make this content available to others; a function for which the statute was intended to provide protection.

23.    Schneider v. Amazon.com, Inc (2001) is no longer relevant and cannot be applied to Amazon's policy of publishing defamatory, libelous statements which have been copyrighted by Amazon and are the sole property of Amazon who thus takes an owner's responsibility. This could be likened to taking ownership of a dangerous car that is a danger to others, refusing to fix it, and then causing

profound injury to others when driving that dangerous car on the street. Amazon's defense is to say the car was harmful before Amazon assumed ownership, before Amazon drove it, before it was driven, and therefore Amazon is not responsible for the damage caused when driven by Amazon even though Amazon knew it would cause profound injury. Specifically, by copyrighting and claiming ownership, and then publishing what is in fact Amazon's property, Amazon becomes responsible for that defamatory content and the damage it causes.   Further, Amazon publishes defamatory content to damage competitors and those whom Amazon wishes to harm and who Amazon has threatened to harm.

24.     Although Amazon may have operated and offered "interactive computer services" or a "message board" in 2001, this is no longer true. **A.** it is well established that Amazon reviewers, including Amazon's top reviewers, are not independent 3rd parties, but are associated with and linked to Amazon who vouches for them and that Amazon is in contact with these reviewers. **B.** it is well established that Amazon reviewers have been paid to post positive or negative reviews including attacks on competitors, and as such, these are paid advertisements and constitute Trade Level. **C.** Amazon has deleted positive reviews in favor of negative reviews and has removed and deleted positive factual reviews which refute defamatory statements so that libelous slanderous go unchallenged,  and thus not all third parties can post comments, and therefore, not all reviews or comments are made available to others (Exhibits to be presented as evidence). **D.** Amazon is not operating a messenger board where 3rd parties can post messages to each other or the public. **E.** Amazon has directly contacted reviewers and has asked these reviewers to write reviews which Amazon has published. **F.**  Amazon has been in direct contact with reviewers who post defamatory content and has encouraged and supported the posting of this defamatory content and has provided these reviewers with content and information not available to the public. **G.**  Amazon is a book publisher and publishes books and authors whose books are in competition with those books and authors whom Amazon does not publish and who do not use Amazon's publishing or printing services, such as the Plaintiff, and Plaintiff and members of this Class have been defamed and libeled by postings copyrighted and owned by Amazon who is a competitor. **H.**

9

these defamatory reviews have been copyrighted by and are the property of Amazon which assumes ownership and all the responsibility of ownership.

25.     The defamatory, libelous content owned, copyrighted, and published by Amazon is in no way protected or sanctioned by the CDA. Amazon's decision about what comments are published are not editorial function or an editorial discretion which the CDA statute was intended to protect, but are designed to damage, punish, and defame competitors and independent authors and publishers.

26.     By publishing defamatory content which Amazon claims as its copyrighted property, and by engaging in these and other illegal, anti-competitive business practices, Amazon  seeks to convince customers that books published by Plaintiff and other competitors are defective or inferior to books and authors published by Amazon; redirects book buyers to books favored by or published or printed by Amazon; and thus Amazon uses defamation, libel, to harm those whom Amazon has threatened, and to expand its monopolistic control over book selling, and to extend that monopoly to include book publishing and printing.

### V. Amazon Associates Program: Fraud, Bait & Switch, Breach of Contract

27.     Jeff Bezos, Amazon, and top Amazon executives have engaged in a criminal conspiracy and have used fraud, deception, misrepresentation, and illegal tactics known as "bait and switch" (Title 16--Code of Federal Regulations, Part 238), to defraud Plaintiff and other authors, small publishers, and the owners of participating websites, of billions of dollars via a click through advertising scheme, known as the "Associates Program." Amazon Associates Program is supposed to link the customers of authors, book publishers, and the Plaintiff, to specific books on the Amazon website, via the internet. Through these "special links" to Amazon, Plaintiff and others of this Class can promote their books on their own websites and direct customers to Amazon where customers can buy these books. In return, and according to contract, Amazon pays a fee to the Plaintiff or other referral agents when these specific books are sold.

28.     As detailed in Amazon's Associates Program Operating Agreement: "The purpose of the

Program is to permit you to advertise Products on your site and to earn advertising fees for Qualifying

Purchases (defined in Section 7) made by your end users. **"Special Links"** are links to the Amazon Site

that you place on your site in accordance with this Operating Agreement... Special Links permit accurate

tracking, reporting, and accrual of advertising fees....We will process Product orders placed by

customers who follow Special Links from your site to the Amazon Site....We will pay you advertising fees

on Qualifying Purchases in accordance with Section 8 and the Associates Program Advertising Fee

Schedule. Subject to the exclusions set forth below, a **"Qualifying Purchase"** occurs when (a) a

customer clicks through a Special Link on your site to the Amazon Site; (b) during a single

Session..." [https://affiliate-program.amazon.com/gp/associates/agreement/]

     29.    From the outset, Amazon and Bezos failed to abide by the terms of this contract which

was never meant to be a contract at all, but a ruse designed to defraud "associates" and to prevent

"associates" and the Federal Courts from examining evidence indicative of a massive criminal

conspiracy, the central most component of which is the deletion of identifying tags after "end users" are

directed to other products. By deleting identifying "special links" identifying tags, Amazon avoids paying

referral fees when "ender users" buy other products, and avoid paying fees even if the "end user"

eventually returns to and then buys the original "special link" product.  Plaintiff implores the Court to refer

this matter to the Department of Justice for criminal investigation and prosecution.

     30.    Amazon has defrauded Plaintiff of advertising fees for the sale of other products by

customers ("end users") sent to them via "special links" by Plaintiff. According to Amazon: "We will

process Product orders placed by customers who follow Special Links from your site to the Amazon

Site...." These "Special Links" including tracking tags, however, are deleted if the customer is directed to

another product.  Instead, Bezos and Amazon engaged and engages in bait and switch, and has violated

its agreement with the Plaintiff through the following ruse: Amazon has refused to directly sell books to

customers directed to them by Plaintiff;  has falsely informed customers that Plaintiff's books are not

available, out of print, or can only be shipped after "6 weeks"; has posted defamatory statements about

Plaintiff's books; and has illegally deleted identifying tags and redirected Plaintiff's customers to other books and products, thereby preventing or reducing the sales of Plaintiff's books to customers sent to Amazon by Plaintiff., and then refusing to pay any advertising fees because these customers ("end users") bought other products and not the book specified by the link and which Amazon refuses to directly sell.

     31.     For example, Plaintiff enrolled in the Amazon Associates Program and established approximately 1,000 links within his websites (which contain hundreds of pages) to books published or authored by Plaintiff including over 100 links to the 4th edition of his textbook, Neuroscience. Regardless of which book Plaintiff links to, the Amazon "special links" tracking codes includes the following "Special Links" identifier: "tag=cosmology07-20" which refers to Plaintiff's "cosmology" advertising account (and not to any specific book). Plaintiff's book, Neuroscience, was offered for sale at Amazon in December of 2011. Soon thereafter, Plaintiff published his textbook, "The Frontal, Parietal, Temporal, Occipital Lobes," as well as other books. Based on knowledge and belief, and the statistical program within Plaintiff's websites (e.g. BrainMind,Cosmology),  between December of 2011 and November 2012,  over 1 million people visited these websites, of whom approximately 100,000 were directed to the Amazon website to purchase or to consider purchasing Plaintiff's books, via these "Special Links." Amazon responded to this tremendous activity and surge of interest by refusing to directly sell Plaintiff's book, Neuroscience and then refused to sell Plaintiff's other books including The Frontal... Lobes (Exhibits to be offered as evidence). Plaintiff's endusers were then redirected by Amazon, to other books and products listed on other Amazon website pages, and the Special Links "tag=cosmology07-20" tracking codes were deleted. Again, according to Amazon: "The purpose of the Program is to permit you to advertise Products on your site...Special Links permit accurate tracking, reporting, and accrual of advertising fees....We will process Product orders placed by customers who follow Special Links from your site to the Amazon Site..."  Amazon, by refusing to directly sell Plaintiff's books, redirects customers to other books, and  the "Special Links" tracking codes are deleted so that

Amazon can avoid paying advertising fees because endusers bought some other product.

32.     Plaintiff had enrolled two separate accounts in the Associates Program, i.e. BrainMind

and Cosmology. Since 2001 and continuing to the present, Amazon has repeatedly tampered with these

accounts, has deleted identifying tags after end users were directed to other products, and has  refused

to pay for referrals even when end users purchased the products specified by the Special Links.  Plaintiff

estimates that over the course of the last 10 years, nearly 1 million end users have been directed to

Amazon and that Amazon has defrauded Plaintiff of approximately 3 million dollars.

33.     Based on knowledge and on belief, Amazon employs the same illegal scheme with other

vendors participating in this "Associates" program, and therefore, illegally uses Plaintiff's website and the

websites of other vendors to direct end-users to books other than the books specified by these special

links, deletes identifying tags, interferes with books sales, and thus cheats Plaintiff and other vendors out

of sales and advertising fees thereby causing Plaintiff and other members of this Class to suffer

significant and profound financial losses and other damages.  Plaintiff estimates that Bezos and Amazon

have defrauded and stolen over 20 billion dollars from "associates" which includes this Plaintiff.

**VI. Amazon is a Monopoly in Violation of the Sherman Antitrust Act**

34.     Amazon has significant economic market power with a market share of up to 70% of all

book sales. This constitutes a monopoly. Amazon is not just a book seller, but a POD printing company

and a book publisher whose illegal business practices detailed above, are a direct assault on and a

violation of the  Sherman Antitrust act.

35.     Upon information and belief, there are thousands of authors and publishers who rely on

POD book printing and publication in the United States, who in the aggregate publish hundreds of

thousands of titles. Many of these authors and publishers, including this Plaintiff have been threatened

by Amazon, have been warned their book sales will suffer if they do not agree to Amazon's illegal "tying"

arrangement, and have injured by Amazon's illegal business practices which if unchecked will continue

to cause even greater injury to the Plaintiff and to other small publishers and authors.

## PARTIES

36.     Plaintiff Rhawn Joseph ("Dr. Joseph") is an author and POD publisher headquartered in San Jose, California. Plaintiff has authored and has published hardback, softcover, and E-books, has published the work of hundreds of authors, and sells approximately 800 books a month.

37.     Defendant Amazon.com, Inc. ("Amazon") is the world's largest online retailer, transacts business throughout the United States,  is headquartered in Seattle Washington, and whose registered office is 1013 Centre Road, Wilmington, County of New Castle, State of Delaware 19805. Defendant Jeffrey P. Bezos is Amazon's CEO, President, and chairman of the board.

## JURISDICTION AND VENUE

38.     This case arises under the Federal antitrust laws. Jurisdiction is conferred upon this judicial district pursuant to 15 U.S.C. §§ 15 and 26, and 28 U.S.C. §§ 1331 and 1337.

39.     Venue is proper in this district pursuant to 15 U.S.C. §§ 15, 22, and 26, and 28 U.S.C. § 1391 because Defendant transacts business in this district and Plaintiff (and likely other class members) operates and has been harmed in this district. Additionally, a substantial part of the interstate trade and commerce involved and affected by the alleged violations of the antitrust laws was and is carried on in part within this district. The acts complained of have had, and will have, substantial anti-competitive effects in this district.

## CLASS ACTION & PLAINTIFF'S ALLEGATIONS

40.     Plaintiff brings this action pursuant to Rule 23(a) and Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure on behalf of himself and is able to adequately represent the Plaintiff's interests and this suit before the Federal Court.

41.     With the Court's permission, Plaintiff also brings this action on behalf of all POD authors, publishers and publishing companies in the United States who have had books listed for sale in the Amazon Bookstore, at any time from February 10, 2008 through the conclusion of trial of this matter (the "Class" and "Class Period").   The claims of the Plaintiff are typical of the claims of the Class, and Plaintiff

has no interest adverse to the interest of other members of the Class.

42.      It is recognized that Plaintiff is completely unable to represent or protect the interests of the Class and would have to retain counsel experienced and competent in the prosecution of complex class actions.  Therefore, although at this juncture Plaintiff represents only himself, Plaintiff asks the Court to leave open the classification of this action as a Class Action suit for at least 90 days thereby providing competent counsel with sufficient time to study this case and to agree to represent this Class.

43.      Plaintiff asks the Court to consider the following:

44.      Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and all Class members have been or will be damaged by the same wrongful conduct of the Defendant alleged herein.

45.      There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members.

46.      Class treatment will permit the adjudication of relatively small claims by many Class members who could not afford on their own to individually litigate an antitrust claim, and claims of fraud and breach of contract, against a large corporate defendant. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of effort and expense that numerous individual actions would engender.

## QUESTIONS BEFORE THE COURT

47.      Does Amazon's conduct constitutes an illegal tying arrangement under the Sherman Act;

A.      Whether the conditions Amazon, Amazon Advantage, Amazon BookSurge impose, has threatened to impose, and has imposed upon Plaintiff and the Class are unfair and improper;

B.      Whether Amazon's conduct has or will cause damage to Plaintiff and members of the Class; and

15

C.      The appropriateness of injunctive relief and the awarding of damages to restrain ongoing and future violations of the law.

48.     Has Amazon engaged in fraud and breach of contract in its administration of Amazon Associates Program, and;

A.      Whether Amazon never intended to abide by the Amazon's Associates Program agreement, and if the purpose of the agreement in-itself was criminal, concocted as part of a criminal conspiracy based on fraud, and if the purpose of this agreement and the Associates Program was to defraud "associates" of billions of dollars.

B.      If Amazon's Associates agreement was designed, as part of a criminal conspiracy, to shield Bezos' and Amazon's criminal conduct from the scrutiny of the Federal Courts.

C.      Whether Amazon's conduct has or will cause damage to Plaintiff and members of the Class; and

D.      The appropriateness of injunctive relief and awarding of damages to restrain ongoing and future violations of the law.

E.      If this matter should be referred to the United States Justice Department for Criminal Investigation and Prosecution.

49.     Has Amazon acted maliciously and with oppression and fraud;

A.      Whether Amazon's conduct has or will cause damage to Plaintiff and members of the Class; and

B.      The awarding of damages and the appropriateness of injunctive relief to restrain ongoing and future violations of the law.

50.     Is Amazon liable for the damages caused to Plaintiff and members of this Class, by the defamatory, libelous contents copyrighted, owned and published by Amazon.com, and;

A.      Whether Amazon's defamatory, libelous conduct has or will cause damage to Plaintiff and members of the Class; and

B.   The awarding of damages and the appropriateness of injunctive relief to restrain ongoing and future violations of the law.

51.   Has Amazon caused personal injury including pain and suffering;

A.   Whether Amazon's conduct has or will cause damage to Plaintiff and members of the Class; and

B.   The awarding of damages and appropriateness of injunctive relief to restrain ongoing and future violations of the law.

## COUNT I. FIRST CAUSE OF ACTION: TYING CLAIM. VIOLATION OF SHERMAN ANTITRUST ACT.

52.   Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 51, above.

53.   Tying Claim. Amazon, unreasonably restrains trade and this is unlawful per se and a violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

54.   Amazon has reduced the availability of, has made false statements about the availability of, and has refused to directly sell books authored or published by the Plaintiff, such as "Neuroscience", "The Frontal... Lobes", because of A) Plaintiff's refusal to use Amazon's POD book publishing subsidiary, BookSurge, and B) Plaintiff's refusal to provide books to Amazon through its Advantage Program, which mandates a substantial 55% discount and requires Plaintiff to pay all shipping and handling costs which would be substantial,  and which would cause Plaintiff to suffer losses on every book sold.

55.   Amazon also attempts to coerce or force other POD authors and publishers to use Amazon's BookSurge for printing services when the costs for using BookSurge  are higher than the costs of and the resulting product is inferior to other POD printing services. Amazon has warned it will stop directly selling books published by other POD printing services and has acted on this threat.

56.   Amazon also attempts to coerce or force other POD authors and publishers, including the Plaintiff, to enroll in Amazon's Advantage Program if they want their books to be directly sold by Amazon. The Advantage Program is expensive and leaves authors and publishers with minimal profit.

57.   Through the unlawful acts and practices described above Amazon has harmed the Plaintiff and this Class, and  has defamed and libeled Plaintiff and other members of this Class who do not sell their books directly to Amazon or who use independent POD services.

**WHEREFORE**, Plaintiff Rhawn Joseph, on his own behalf and on behalf of the putative Class, prays that the Court declare, adjudge and decree the following:

A. that the Court grants Plaintiff's claims for injunctive relief, and Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages and other monetary relief.

B. that the conduct alleged herein constitutes unlawful tying in violation of Section 1 of the Sherman Antitrust Act;

C. that Plaintiff is entitled to damages and injunctive relief under the Clayton Act, 15 U.S.C. § 26, and other applicable law, enjoining Amazon from continuing or engaging in the unfair and anti-competitive activities alleged herein;

D. that Plaintiff is entitled to damages, penalties and other monetary relief provided by the Clayton Act, 15 U.S.C. § 15, and other applicable law, including treble damages;

E. that Plaintiff shall recover their costs of suit, including reasonable attorneys' fees and pre- and post- judgment interest;

F. that Plaintiff is entitled to an order requiring full restitution of all funds acquired from Amazon's unfair business practices, including funds and earnings obtained through Amazon's breach of contract and bait and switch tactics employed in Amazon's Associates Advertising program.

G. that Plaintiff is entitled to full restitution for lost profits from books which Amazon refused to directly sell, for books Amazon has claimed are out of print, for books Amazon has claimed cannot be shipped until "1 to 3 weeks" or for "3 to 6 weeks."

H. that this action may be maintained as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure with respect to Plaintiff's claims for injunctive relief, and Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages and other monetary relief, and

declaring Plaintiff may serve as a representative of the Class if competent counsel experienced in the prosecution of complex class actions becomes attorney of record and acts as counsel for the Class;

I. that Plaintiff be granted such other, further and different relief as the nature of the case may require or as may be determined to be just, equitable and proper by the Court.

## COUNT II. SECOND CAUSE OF ACTION: LIBEL, DEFAMATION, SLANDER, TRADE LIBEL

58.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 57, above. Plaintiff also refers the Court to Section IV, paragraphs 21-26.

59.     In June of 2012, Plaintiff was repeatedly threatened by Defendant Amazon which warned Plaintiff that Amazon had investigated Plaintiff's BrainMind.com website which contains hundreds of pages of articles and chapters on the brain authored by the Plaintiff, advertisements for the numerous books published or authored by the Plaintiff, and dozens of scientific documentary films which were produced and narrated by the Plaintiff and which have been viewed over 44 million times. Specifically, Amazon singled out Plaintiff's BrainMind.com website, and warned the Plaintiff Rhawn Joseph (who is also a publisher) to stop publishing books authored by Rhawn Joseph. In these same emails, Defendant Amazon defamed, libeled and slandered the Plaintiff, and accused Plaintiff Rhawn Joseph of stealing from Rhawn Joseph, and accused Plaintiff Rhawn Joseph of violating the copyright of Rhawn Joseph, and which accused Plaintiff Rhawn Joseph of plagiarizing the works of Rhawn Joseph. Amazon informed Plaintiff Rhawn Joseph, that as punishment for publishing works authored by Rhawn Joseph, and because of the BrainMind.com website, Amazon would stop selling Plaintiff Rhawn Joseph's books.

60.     Three months later, in October of 2012, Amazon published, copyrighted and claimed ownership of a defamatory, libelous, slanderous attack on Plaintiff Rhawn Joseph, and attacked Plaintiff's website and his book publishing company.  Plaintiff was defamed by name, and in this copyrighted publication owned by Amazon, it is falsely claimed that Plaintiff "Rhawn Joseph" is a "Meglamaniac," and it is falsely claimed Plaintiff has no friends, knows no editors, is an amateur with no knowledge of modern neuroscience, and has a "high school" understanding of neuroscience and head

injuries, and which also attacks Plaintiff's website and publishing company while simultaneously praising Amazon's publishing company Kindle Books. (Exhibit to be offered as evidence). All these defamatory, libelous statements are easily disproved defamatory falsehoods.

61.    "Meglamaniac" is a psychiatric diagnosis, also known as "mania" and also classified as "manic depression" and a "Unipolar" and "Bipolar" affective and psychotic mental disorder[American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM), World Health Organization's International Statistical Classification of Diseases and Related Health Problems (ISC)]. Meglamaniacs and those suffering from "Meglamania" and other variants of mania suffer from delusions and hallucinations, believe themselves to be god-like, omnipotent, or all-powerful, and are profoundly insane, psychotic, delusional, and mentally ill, and these "maniacs" are considered a danger to themselves and to others. According to the DSM and ISC, individuals suffering from mania are delusional, have racing uncontrolled thoughts,  may go days without sleep, abuse drugs, are  sexually irresponsible, are easily distracted, are unable to complete tasks, display profoundly poor judgement, are hypersexual, out of control, can't think rationally, act impulsively without concern for consequences, and who require "hospitalization to prevent harm to self or others..." [DSM].

62.    Plaintiff is not a "meglamaniac" and does not suffer from "meglamania" or any other variant of "mania" or mental or psychiatric disorder.  Plaintiff has never been treated for or diagnosed as suffering from meglamania, unipolar or bipolor disease, or any of the various form of mania or from a mental illness or psychiatric disorder. Plaintiff does not believe and has never believed himself to be god, or god-like, or omnipotent, or all powerful.

63.    Plaintiff has never written, published, or uttered any statements which would indicate Plaintiff believes himself to be god, or god-like, omnipotent, or all powerful, or that he suffers from any of the symptoms associated with "meglamania" or "mania."

64.    Plaintiff has twice written Defendants demanding that these published lies be deleted and removed from the Amazon.com website and has denied that he suffers from "meglamania" or any form

of "mania" and has denied that he believes he is god, or god-like, or omnipotent, or all powerful. Further Plaintiff warned he would file suit if these defamatory statements were not deleted [Exhibits to be offered as evidence].

65.    Defendant Amazon.com has twice refused Plaintiff's demands and has twice (and subsequently) stated:

"I'm very sorry about any concerns caused by this review and  I understand your concerns, but the review doesn't violate our posted guidelines, so I'm unable to remove it in its current format.

However, as the author of this title, you can provide feedback about this review by voting or commenting on it. To vote, click the "Yes" or "No" buttons next to "Was this review helpful to you?" To comment, click the Comments link at the bottom of the review.

We try to encourage our customers to give their honest opinions on our products while staying within our guidelines. As a retailer we are interested in cultivating a diversity of opinion on our products. Part of that is allowing our customers to air their honest thoughts on items they have received."

66.    Plaintiff Rhawn Joseph is not a "book" or a "product" or an "item" but a private person.

67.    Plaintiff does not offer himself or his website for sale at Amazon.com, and there are no books (e.g. biographies, memoirs) about the Plaintiff or his website on sale at Amazon.com or at any other book store.

68.    The title of the book in question is not "Rhawn Joseph" but  "Head Injuries" and the subject matter of the book is about head injuries. The name "Rhawn Joseph" or "Rhawn" does not appear on the book cover or inside or anywhere on this book.

69.    Defendants deleted factual positive reviews which detailed the history of the "Head Injuries" book, earlier versions of which comprised an entire Section of Plaintiff's scholarly, highly acclaimed neuroscience text; and the reviews Defendants removed included the following:

"One of the most astonishing books of our time." -Bulletin of Science, Technology & Society,"

"An intense, in-depth examination of the relationship between neuroanatomy and associated

21

behavior, personality, thinking, psychosis, and emotions." 4 Stars! Highly recommended. -Medical Review Journal.

"First rate... Among the best... Deserving of a place on the shelf of any neuropsychologist, neuropsychiatrist, or behavioral neurologist." -the journal of Neuropsychiatry.

"Excellent... Comprehensive... Exceptional... Enthusiastically recommended!" -Health Sciences Review Journal.

"Astounding... astounding... [Joseph] deserves our admiration." -Electroencephalography and Clinical Neurophysiology --Electroencephalography and Clinical Neurophysiology."

"The finest analysis of... brain phenomena that we have to date."- The New England Review of Books.

"Joseph is to mind brain studies as Asimov and Sagan are to the physical sciences." - Choice.

Defendants deleted and removed positive, factual information so that defamatory statements would go unchallenged, and as such, Defendants demonstrated their intention was to libel, defame, and slander the Plaintiff.

70.     Amazon has repeatedly targeted Plaintiff, Plaintiff's website, and Plaintiff's book publishing company and Amazon has repeatedly engaged in libel, Trade Libel, and has defamed books published by Plaintiff and whose authors include hundreds of scientists, many world famous.

71.     Amazon's defamatory practices are not protected and sanctioned by Section 230 of the Communications Decency Act ("CDA") and the ruling in the case of Schneider v. Amazon.com, Inc. (Case No. 46791-3-I, 31 P.3d 37 ; Wash. Ct. App., September 17, 2001) are no longer relevant as detailed in Section IV, paragraphs 21-26 of this complaint, and for the following additional reasons:

A.     Amazon's conduct can be likened to Amazon obtaining a loaded gun from a third party, and then pointing that gun at competitors and pulling the trigger. By publishing defamatory statements Amazon is pulling the trigger, firing the gun, and striking competitors and those who refuse to agree to Amazon's illegal tying practices. Amazon not only pulls the trigger and fires the gun, but copyrights and

claims ownership of the bullets.

B.    Amazon is not "neutral" but has removed and deleted information about the factual history of the "Head Injury" book, and which included positive reviews published in scientific journals and which refuted the defamatory claim Plaintiff is a "meglamaniac" and which refuted Amazon's copyrighted claims that Plaintiff has no "friends," knows "no editors" and is "amateurish" and has no knowledge of modern neuroscience.

C.    As to the October 2012 defamatory claims, Amazon employees and legal department, directly consulted and communicated with the person who offered Amazon the defamatory content Amazon copyrighted and published. Amazon provided this individual with content which was not available to the public, which Amazon then published. This so called "third party" is directly associated with the Defendants and may be an employee of Amazon . Amazon removed comments which refuted these defamatory statements, and thus Defendants conspired to defame Plaintiff.

72.    Defendants' published as if it were established medical fact, that Plaintiff was mentally ill, psychotic, delusional ("meglamanaic") and they did so without justification and knowing full well these accusations were false, and they did so to cause the Plaintiff harm and have harmed the Plaintiff and this is actionable [see Quelimane Co. Inc., v Stewart Title Guar. Co (1998) 19 Cal.4th 26,47; Hoyen v, Manhattan Beach City School District (1978) 22 Cal.3d 508; CCC 1708].

73.    The posting of Amazon's copyrighted defamatory statements which defames and libels the Plaintiff is part of a pattern of malicious conduct the purpose of which is to harm and damage the Plaintiff who is a competitor, and this is actionable  [CPC 125; CCC 43, 46(1)(5), 527.6, 1431.2, 527.6, 3294(c), CHSC 1527(g)].

74.    The Defendants' malicious, odious conduct is not protected by the CDA and meets the standards of California law and Case law [Martintelli vs International House USA, 161 Cal. App. 4th 1332, 1337 (2008)]: "In order for a defendant to be liable for defamation, the defamatory matter must be 'published,' i.e. communicated to some third person who understands the defamatory meaning and

application to plaintiff." [(Cunningham vs Simpson, 1 Cal. 3d 301, 307; Haley v Casa Del Rey

Homeowners Ass'n 153 Cal. App. 4th 863, 877 (2007)].

75.     According to California Civil Code 46 "Slander is a false and unprivileged publication,

orally uttered, and also communications by radio or any mechanical or other means which: 3. Tends

directly to injure him in respect to his office, profession, trade or business, either by imputing to him

general disqualification in those respects which the office or other occupation peculiarly requires, or by

imputing something with reference to his office, profession, trade, or business that has a natural

tendency to lessen its profits; 5. Which, by natural consequence, causes actual damage.

76.     Defendants' actions constituted a malicious, intentional publication of false and

unprivileged statements as if they were established medical fact and as if the Plaintiff is profoundly

psychotic, delusional, and incompetent and that his books are therefore written by an insane person; and

Defendants' published false defamatory, libelous claims about Plaintiff's publishing company, about

Plaintiff's website, about books authored by other scientists and published by Plaintiff; and this meets

Case law requirement for a claim of trade libel and this meets Case law requirement for a claim of trade

libel [Mann v Quality Old Time Service, Inc. 120 Cal. App. 4th 90, 104 (20040; Leonardi v Shell Oil Co.,

216 Cal. App 3d 457, 572 (19800); 42 U.S.C. § 1983], and for both trade libel and defamation [Franklin v.

Dynamic Details, Inc., 16 Cal. App. 4th 375, 384 (2004).; Martintelli vs International House USA, 161 Cal.

App. 4th 1332, 1337 (2008); (Cunningham vs Simpson, 1 Cal. 3d 301, 307; Haley v Casa Del Rey

Homeowners Ass'n 153 Cal. App. 4th 863, 877 (2007)].

77.     According to California Civil Code 43,  "every person has... the right of protection... from

personal insult, from defamation, and from injury to his personal relations." According to California Civil

Code 45, "libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed

representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which

causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.

78.     Plaintiff has been severely and profoundly injured by the slanderous, defamatory, libelous,

malicious, harassing, and negligent actions of the Defendants and this is actionable [see Quelimane Co. Inc., v Stewart Title Guar. Co (1998) 19 Cal.4th 26,47; Hoyen v, Manhattan Beach City School District (1978) 22 Cal.3d 508; CCC 1708], and a violation of California Civil Code [CPC 125; CCC 43, 46(1)(5), 527.6, 1431.2, 527.6, 3294(c), CHSC 1527(g)].

79.    Defendants have caused Plaintiff percuniary damage [Leonardi v Shell Oil Co., 216 Cal. App 3d 457, 572 (19800], and Plaintiff is entitled to Economic or Special Damages for losses related to the injuries inflicted which are a result of Defendants' lies and odious conduct. Plaintiff is also entitled to future damages, including those economic and noneconomic damages that Defendants sought to inflict.

80.    Plaintiff is also entitled to compensation for emotional distress or psychological injury as a result of Defendants' misconduct. see Bush v. Lucas, 462 U.S. 367 (1983). Plaintiff is entitled to noneconomic and general damages, and those losses which naturally or necessarily result from this disgusting conduct.  General damages include pain and suffering, loss of enjoyment of life,  emotional distress, and mental anguish. Thus, Plaintiff is entitled to damages for loss of consortium which relates to factors such as loss of society, loss of respect and  loss of enjoyment of life,  see Molzof v. United States, 501 U.S. 301 (1992).

81.    Plaintiff is entitled to  substantial damages even if the Court believes compensation would be punitive. See U.S. Supreme Court Molzof v. United States, 502 U.S. 301, (1992).

**WHEREFORE**, plaintiff prays for judgment against defendants and each of them as follows:

82.    For Plaintiff Rhawn Joseph, Ph.D. and against Defendants Amazon.com Inc. and Jeffrey Bezos, on the Second Count and Cause of Action for the following:

A.    General damages in the amount of 100 million dollars.

B.    Losses in the amount of 20 million dollars.

C.    Economic and Special Damages of 100 million dollars.

D.    Percuniary Damages of 100 million dollars.

E.    Punitive and exemplary damages of 500 million dollars.

F.    Attorney's fees.

## COUNT III. THIRD CAUSE OF ACTION:  MALICE, OPPRESSION, FRAUD

83.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 82, above, and points out Defendants deleted positive reviews.

84.    Defendants engaged in fraud, oppression, and have acted maliciously and with malice and are in violation of California Civil Code, 3294.   (c)(1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiffs or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others. (2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights. (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury. see also CCC1714. (a), CCC3294 9(c)(3)].

85.    Fraud. Defendants Bezos and Amazon have defrauded Plaintiff of millions of dollars in sales and advertising revenue, and others of this class of billions of dollars, and they accomplished this by A) falsely claiming Plaintiff is psychotic and incompetent, B) refusing to directly sell books authored or published by Plaintiff, C) publishing slanderous, defamatory comments about books published by Plaintiff's publishing company whose authors include world famous scientists, D) falsely informing customers that books authored or published by Plaintiff were out of print or could not be shipped for "3 weeks" or "6 weeks" and then directing Plaintiff's "end users" to other books.

86.    Fraud. Plaintiff draws the Court's attention to paragraphs 27 through 33. Via "Special Links" to Plaintiff's books, an estimated 1 million "end users" of Plaintiff's websites were directed to the Amazon bookstore and were then redirected by Amazon to other products. Amazon removed the identifying electronic tags when "end users" were directed to other books, so that Defendants could avoid paying Plaintiff fees when "end users" bought other products or even if they returned to buy

Plaintiff's books.

87.     As required by California Code of Civil Procedure, 452.10 (a)(1,2) Plaintiff estimates that his economic losses and other losses due to the damage caused by the Defendant's to be over  3 million dollars, and that future damages are estimated to be $100 million.

**WHEREFORE**, plaintiff prays for judgment as hereinafter set forth.

88.     For Plaintiff Rhawn Joseph, Ph.D. and against Defendants, Amazon.com Inc. and Jeffrey Bezos, on the Third Count and Cause of Action for the following:

A.     General damages.

B.     Economic and Special Damages.

C.     Losses and Future Losses in the amount of $100 million.

D.     Punitive and exemplary damages.

E.     Attorney's fees.

F.     Such other and further relief as the court deems just.

## COUNT IV. FOURTH  CAUSE OF ACTION: PERSONAL INJURY

89.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 88, above.

90.     The Defendants had a legal duty of care toward the Plaintiff which is to not cause injury to the Plaintiff (Hoyen v, Manhattan Beach City School District (1978) 22 Cal.3d 508).  According to California Civil Code, 3281.  "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages." According to California Civil Code 1708, "every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his or her rights." According to California Civil Code 1714.  (a) "every one is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person.

91.     Plaintiff is entitled to compensation for emotional distress or psychological injury as a result of Defendants' misconduct. Bush v. Lucas, 462 U.S. 367 (1983).  Defendants have a 6 year history of harassing, threatening, attacking, slandering, defaming, and libeling the Plaintiff including interfering with the sales of his books and refusing to stock his books. Defendants published claims that Plaintiff is psychotic, delusional, and incompetent, are part of a pattern of odious, malicious conduct, the purpose of which was not just to harm Plaintiff but to convince others Plaintiff is incompetent, insane, dangerous, without friends, and should be shunned, attacked and avoided. Plaintiff, therefore, is entitled to damages for loss of consortium which relates to factors such as loss of society, loss of respect and  and loss of enjoyment of life,  see Molzof v. United States, 501 U.S. 301 (1992).

92.     Plaintiff is entitled to noneconomic and general damages, including losses which naturally or necessarily result from Defendants' conduct.  General damages include pain and suffering, loss of enjoyment of life,  emotional distress, and mental anguish, see Bush v. Lucas, 462 U.S. 367 (1983).

**WHEREFORE**, Plaintiff prays for judgment as hereinafter set forth.

93.     For Plaintiff  Rhawn Joseph, Ph.D. and against Defendants, Amazon.com Inc. and Jeffrey Bezos, on the Fourth Count and Cause of Action for the following:

A.      General damages.

B.      Economic and Special Damages.

C.      Percuniary Damages.

D.      Punitive and exemplary damages.

E.      Attorney's fees.

F.      Such other and further relief as the court deems just.

## COUNT V. FIFTH  CAUSE OF ACTION: BAIT & SWITCH, BREACH OF CONTRACT

94.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 93, above.

95.     Defendants Bezos, Amazon, and other high ranking Amazon executives conspired

together and concocted an illegal, criminal scheme, the Amazon Associates Program, to defraud "associates" of tens of billions of dollars. Defendants' sought to protect themselves from discovery by creating a phony "agreement" which was designed to preclude scrutiny or the discovery of this criminal activity by the courts.  However, the Federal Court is not party to or bound by this "agreement", and as the "agreement" served a criminal purpose and was designed for the explicit purpose of protecting criminal activity and preventing prosecution in a Court of law, and as the Defendants' never had any intention of abiding by this "agreement", and has the Defendants violated this agreement from the very beginning, the "agreement" has no binding or legal validity. Rather, Amazon's Associates Program "agreement" is itself evidence of widespread criminal activity and deserves to be scrutinized by the Court along with the evidence of widespread, systematic fraud.

96.     Plaintiff draws the Court's attention to Section V paragraphs 27 through 33. In summary: Plaintiff entered into an agreement with the Defendants, where Plaintiff directed "end users" via "special links" to Defendant's website, in a program known as "Amazon Associates."  Plaintiff and others of this Class, were to be paid a fee for each book or product sold, and Plaintiff used this program to sell Plaintiff's books via these "special links."

97.     The Defendants engaged in breach of contract and violated Federal Law by using a several illegal methods, including an illegal sales tactic known as "bait and switch" (Title 16--Code of Federal Regulations, Part 238). Defendants refused to directly sell Plaintiff's books to Plaintiff's end users, falsely claimed Plaintiff's books were not available or could not be shipped for "1 to 3 weeks" or "3 to 6 weeks", and then directed Plaintiff's end users to other books and products, and also stripped identifying tags so that when endusers bought other products Defendants would not have to pay fees to Plaintiff.  Thus, the Defendants committed breach of contract [CCC 2711 (1)(a)(b) and were clearly negligent [CCC1714. (a)], and engaged in fraud [CCC1714. (a), CCC3294 9(c)(3)] as well as a criminal conspiracy. The Plaintiff is entitled to damages due to fraud and breach of contract by the Defendants.

98.     Plaintiff's suffered damages and losses because of A) Lost books sales. B) Failure to

receive advertising fees. As required by California Code of Civil Procedure, 452.10 (a)(1,2) Plaintiff

estimates that his economic losses and other losses due to the damage caused by the Defendants'

breach of contract, to be over $3 million dollars.

**WHEREFORE,** Plaintiff prays for judgment as hereinafter set forth.

99.    For Plaintiff  Rhawn Joseph, Ph.D. and against Defendants, Amazon.com Inc. and

Jeffrey Bezos, on the Fifth Count and Cause of Action for the following:

A.    General damages.

B.    Economic and Special Damages.

C.    Percuniary Damages.

D.    Punitive and exemplary damages.

E.    Attorney's fees.

F.    Such other and further relief as the court deems just.


**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Dated 12/9/2012                          RHAWN JOSEPH, PH.D.

                                                          _____ Plaintiff:

VERIFICATION

I, Rhawn Joseph, Ph.D., am the plaintiff in the above-entitled action. I have read the foregoing complaint

and know its contents. The same is true of my own knowledge, except as to those matters that are

alleged in the complaint on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America and the State of

California that the foregoing is true and correct

_____/9/1__[date]                          _____

December 9, 2012                          Plaintiff: Rhawn Joseph, Ph.D

30