THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RHAWN JOSEPH,

              Plaintiff,

     v.

AMAZON.COM, INC., *et al.*,

              Defendants.

CASE NO. C13-1656-JCC

ORDER

This matter comes before the Court on Plaintiff's motion for partial summary judgment (Dkt. No. 43) and Defendants' cross-motion for judgment on the pleadings and/or summary judgment (Dkt. No. 60). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby DENIES Plaintiff's motion for partial summary judgment and GRANTS Defendants' motion for judgment on the pleadings and/or summary judgment.[1]

## I.    BACKGROUND

### A.    Amazon's Business Practices

Dr. Rhawn Joseph, Ph.D., proceeding *pro se*, brings this action against Amazon.com, Inc.

---

[1] Plaintiff did not request oral argument on his summary judgment motion, though Defendants did request oral argument on their cross motion. The Court denies Defendants' request because it grants Defendants' motion and finds that oral argument would not be beneficial in the resolution of this case. *See* Local Rules W.D. Wash. CR 7(b)(4) (all motions to be decided without oral argument unless argument is requested in the caption of the motion and the Court grants the request); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) ("[A] district court can decide [a summary judgment motion] without oral argument if the parties can submit their papers to the court.").

1   ("Amazon") and its CEO Jeff Bezos. Plaintiff brings a federal antitrust claim based on an

2   allegedly unlawful "tying" arrangement, as well as claims for "libel/defamation/slander/trade

3   libel"; "malice, oppression, fraud"; "personal injury"; and breach of contract. (Dkt. No. 1 at ¶¶

4   52–91.) Dr. Joseph is an "author and science book publisher" who has sold his books online

5   through Amazon's website. He relies on "print on demand" ("POD") technology to print the

6   books he sells. POD technology refers to the technology that enables books to be printed only

7   when an order is received from a customer or retail bookseller, rather than being pre-printed in

8   bulk and later sold from an inventory of hard copies. Plaintiff explains that POD books "are a

9   cost effective means of book production as there is no need to maintain storage facilities or large

10  (expensive) inventories and books can be printed when orders are received." (*Id.* at ¶ 4.) Plaintiff

11  "relies on a company known as Lightning Source to print [his] POD books." (*Id.* at ¶ 3.)

12       Amazon operates the website www.amazon.com, through which consumers may

13  purchase books and other items. Jeff Bezos is Amazon's founder and CEO. Amazon offers

14  publishers and authors multiple options for selling books on its website. Under the "Amazon

15  Advantage" program, authors and publishers may have their books sold directly from

16  Amazon.com to the customer. When sellers utilize this program, consumers give their credit card

17  and shipping information to Amazon when they want to buy the book. Amazon then purchases

18  the book at a price below the retail price from the publisher/author and re-sells it to the end-

19  customer at a marked-up retail price. To participate, sellers must provide hard copies of their

20  books directly to Amazon before the sale or, according to Plaintiff, have their books printed

21  using Amazon's POD service, BookSurge.[2] Once a customer buys the book, Amazon will either

22  ship the available copy directly from its fulfillment center or have copies printed using its

23  BookSurge POD service and shipped to the consumer. (Dkt. Nos. 1 at ¶ 18; 60 at 8.) The

24  company has publically stated that publishers may utilize any POD printer they wish in

25

26

---

[2] BookSurge has since become known as CreateSpace. The Court refers to BookSurge in this Order.

1  providing books for fulfillment purposes, so long as a limited number of hard copies of the books

2  are provided to Amazon beforehand. Amazon has explained that the reason for this

3  requirement—that a publisher either use its in-house POD service or provide a limited number of

4  hard copies for each book title when using its own POD printer—is to enable Amazon to fulfill

5  orders in the most efficient manner. (*See* Dkt. No. 66 at 36.)

6      Publishers and authors may also utilize the "Amazon Marketplace," through which

7  booksellers can sell books directly to consumers on Amazon's website. On this portion of

8  Amazon's website, consumers provide shipping and billing information directly to the third-

9  party seller, who then either ships the books to the consumer or has their POD printer-of-choice

10 print the book and ship it to the consumer. (*Id.* at ¶ 20.) Even though the sale occurs between the

11 third-party seller and the consumer, Amazon takes a percentage of the sale price as a charge for

12 providing the platform that linked the buyer and seller. (*Id.*) Additionally, Amazon offers the

13 "Associates" program, which enables website owners to include links from their sites to

14 Amazon's website. "Associates" earn money each time a customer clicks through from the

15 associate's website and makes a qualifying purchase on Amazon.com, subject to certain

16 contractual definitions and limitations. (Dkt. Nos. 60 at 8; 63, Exs. A and B.) Finally, Amazon's

17 website allows users to post reviews of products that they have purchased, subject to the

18 limitations established in Amazon's published policies. (Dkt. No. 62, Ex. A.) According to

19 Amazon, it does not create or direct the content of any reviews, though it does require that the

20 reviews comply with its review policies. (*Id.* at ¶ 3.) It is undisputed that Dr. Joseph has entered

21 into agreements with Amazon to participate in its Advantage, Marketplace, and Associates

22 programs.

23      **B.   Procedural History**

24      Dr. Joseph filed this putative class action lawsuit on December 10, 2012 in the Northern

25 District of California. His Complaint revolves primarily around his "tying" claim under federal

26 antitrust law. He alleges that Amazon unlawfully refuses to "directly" sell books printed by a

1   POD printer other than its own subsidiary, BookSurge, which he believes to constitute an

2   unlawful tying arrangement under § 1 of the Sherman Act. Plaintiff also alleges that Amazon

3   regularly "publishes and copyrights defamatory and libelous statements about competitors

4   including Plaintiff." (Dkt. No. 1 at ¶ 21.) He argues in his Complaint and briefing that Amazon is

5   responsible for reviews that he believes to be defamatory, though the allegations are scattered

6   and unclear. Finally, Plaintiff asserts that Amazon and Mr. Bezos have breached a contract and

7   engaged in a "bait and switch" scheme to defraud him by failing to pay him the appropriate

8   advertising referral fees due under the Amazon Associates program. (*Id.* at ¶ 30.) Instead, he

9   alleges, Amazon removes the special "tracking tag" once users are directed to its website and

10  purchase other products. (*Id.*)

11      After Mr. Joseph brought suit, Amazon moved to dismiss or transfer the case to the

12  Western District of Washington.[3] The motion was granted in part and the case was transferred to

13  this district in late 2013. (*See* Dkt. No. 35.) Before this Court could hold a status conference and

14  establish a case management schedule, Plaintiff filed a motion for summary judgment on his

15  federal antitrust and state-law "defamation/libel/slander/trade libel" claims. (Dkt. No. 43.)

16  Plaintiff also submitted a number of additional filings, including a motion for an order

17  authorizing the deposition of Mr. Bezos (Dkt. No. 53), a deposition notice to the same effect

18  (Dkt. No. 54), a "discovery plan" (Dkt. No. 55), a "status report" (Dkt. No. 56), a motion and

19  petition to authorize Plaintiff to proceed with discovery (Dkt. No. 57), and a Reply to

20  Defendants' Answer (Dkt. No. 58). Defendants filed a cross-motion and response to Plaintiff's

21  summary judgment motion (Dkt. No. 60), as well as a cross-motion for a protective order

22  prohibiting the deposition of Jeff Bezos. (Dkt. No. 70.) The Court vacated the pending status

23  conference and stayed any further motion practice (unless the requesting party obtained leave of

24  _____

25      [3] This is not the first time Dr. Joseph has sued Amazon and Mr. Bezos. He brought similar claims against
    them in 2001, but a Northern District of California judge dismissed that lawsuit based on a forum selection clause.
26  *University Press, Calif. v. Amazon.com*, Case No. C01-20902 (N.D. Cal. Nov. 29, 2001). The same forum selection
    clause resulted in this case being transferred from the Northern District of California to this district.

Court to file a motion) while the pending motions were taken under consideration. (Dkt. No. 77.) Plaintiff has nonetheless continued to file "status reports," many of which directly accuse the Court of bias even though the Court has not yet rendered any ruling on the motions in this case. (*See* Dkt. No. 79, 81, 84, 85.) Upon review, the Court concludes that Defendants' motion should be granted and this lawsuit dismissed.

## II.    DISCUSSION

### A.    Legal Standard

Plaintiff moves for summary judgment and Defendants move for judgment on the pleadings and/or summary judgment. Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings "is properly granted when, taking all the allegations in the pleadings as true, a party is entitled to judgment as a matter of law." *Lyon v. Chase Bank USA, N.A.,* 656 F.3d 877, 883 (9th Cir. 2011). The court evaluates a Rule 12(c) motion for judgment on the pleadings under the same standard as a Rule 12(b)(6) motion to dismiss. *Dworkin v. Hustler Magazine Inc. .,* 867 F.2d 1188, 1192 (9th Cir. 1989). When ruling on a motion to dismiss, a court may consider the pleadings, documents attached to the pleadings, documents incorporated by reference in the pleadings, and matters of judicial notice. *United States v. Ritchie,* 342 F.3d 903, 907–908 (9th Cir. 2003).

The standard governing summary judgment motions is different. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party, *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247–50 (1986), and may consider extrinsic materials so long as they would be admissible in evidence. *See* Fed. R. Civ. P. 56(c). Once a motion for summary judgment is properly made and supported, the opposing party

1  "must come forward with specific facts showing that there is a genuine issue for trial."

2  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are

3  those that may affect the outcome of the case, and a dispute about a material fact is genuine if

4  there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.

5  *Anderson*, 477 U.S. at 248–49. Ultimately, summary judgment is appropriate only against a party

6  who "fails to make a showing sufficient to establish the existence of an element essential to that

7  party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

8  *Catrett*, 477 U.S. 317, 324 (1986).

9      **B.      Plaintiff's Class Action Allegations**

10         The Court first addresses the fact that Dr. Joseph brings this lawsuit as a putative class

11  action on behalf of "all [print on demand] authors, publishers, and publishing companies in the

12  United States who have had books listed for sale in the Amazon Bookstore, at any time from

13  February 10, 2008 through the conclusion of trial of this matter . . ." (Dkt. No. 1 at ¶ 41.) As a

14  *pro se* litigant, Dr. Joseph may not represent other individuals in a class action lawsuit. *See*

15  *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 663 (9th Cir. 2008) ("It is well established that the

16  privilege to represent oneself *pro se* provided by [28 U.S.C.] § 1654 is personal to the litigant

17  and does not extend to other parties or entities."); *see, e.g.*, *Keyter v. Boeing, Inc.*, Case No. C13-

18  0982, 2013 WL 4458975, at *1 (W.D. Wash. Aug. 16, 2013) (precluding *pro se* plaintiff from

19  representing putative class). Accordingly, the Court dismisses Dr. Joseph's Complaint insofar as

20  he purports to represent any individual or entity other than himself.

21      **C.      Plaintiff's "Tying" Claim Under 15 U.S.C. § 1**

22             **1.      Plaintiff's Antitrust Claim is Untimely**

23         Defendants argue first that Plaintiff's tying claim is untimely. Private antitrust actions are

24  subject to a four-year statute of limitations from the date the cause of action accrues under 15

25  U.S.C. § 15b, *Samsung Electronics Co., Ltd., v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir.

26  2014), and "a cause of action accrues . . . when a defendant commits an act that injures a

1    plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971).

2    There is an exception to this limitations rule for continuing violations. *Samsung*, 747 F.3d at

3    1202. "To state a continuing violation of the antitrust laws in the Ninth Circuit, a plaintiff must

4    allege that a defendant completed an overt act during the limitations period that meets two

5    criteria: '1) It must be a new and independent act that is not merely a reaffirmation of a previous

6    act; and 2) it must inflict new and accumulating injury on the plaintiff.'" *Id.* (quoting *Pace*

7    *Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987)). In the context of an

8    allegedly unlawful tying arrangement, the cause of action first accrues when the arrangement

9    was executed or became effective. *See Witt Co. v. RISO, Inc.*, 948 F.Supp.2d 1227, 1236 (D. Or.

10   2013); *Rite Aid Corp. v. Am. Exp. Travel Related Servs. Co., Ins.*, 708 F.Supp.2d 257, 265

11   (E.D.N.Y. 2010).  "To restart the statute of limitations in a tying situation, [a plaintiff] must

12   show that [a defendant] had the ability [to] and actually did enforce the tie during the limitations

13   period." *Eichman v. Fotomat*, 880 F.2d 149, 160 (9th Cir. 1989) (citation omitted).

14        Dr. Joseph's claim is untimely and Amazon is entitled to judgment on the pleadings.

15   Plaintiff's tying claim is premised solely upon Amazon's allegedly unlawful policy of requiring

16   publishers who want to use its service to either (a) use Amazon's own POD service, BookSurge;

17   (b) enroll in the Amazon Advantage Program and provide approximately five hard copies of each

18   book title to be sold if the publisher wishes to have Amazon directly sell the books on their

19   behalf; or (c) sell the books directly to consumers through Amazon's Marketplace program. As

20   Plaintiff alleges and continuously argues, Amazon made this policy publicly effective no later

21   than March 31, 2008, when it published an "Open Letter to Interested Parties" about its new

22   POD-policy.[4] (*See* Dkt. No. 66, Ex. A.) In Plaintiff's Complaint, he refers primarily to a single

23   document that appears to be correspondence or an open letter from Amazon—the March 31,

24   _____

25       [4] To the extent the Court concludes that judgment on the pleadings is appropriate, consideration of the
     "Open Letter" is permissible because Dr. Joseph's Complaint expressly references and relies upon that document.
26   (*See* Dkt. No. 1 at ¶ 9.)

2008 Open Letter—and repeatedly refers only to that letter when discussing his tying claim.[5] (*See* Dkt. No. 66, Ex. A.) Because Dr. Joseph's claim appears to be based solely on Amazon's 2008 Open Letter regarding its POD policy, Plaintiff had until March 31, 2012 to file a complaint based on that allegedly unlawful tying arrangement. *Cf. Rite Aid Corp. v. Am. Exp. Travel Related Servs. Co.*, *Ins.*, 708 F.Supp.2d 257, 265 (E.D.N.Y. 2010) ("Under *Zenith's* general accrual rule, any section one cause of action arising out [the defendant]'s merchant agreements accrued on the date that Plaintiffs' merchant agreements took effect."). He failed to do so, as this lawsuit was filed on December 10, 2012. (*See* Dkt. No. 1); *see*, *e.g.*, *Eichman*, 880 F.2d at 160 (statute of limitations barred tying claim when lease contract containing alleged illegal tying provision was entered into outside the limitations period); *Aurora Enters., Inc. v. Nat'l Broad. Co.*, 688 F.2d 689, 693 (9th Cir. 1982) (statute of limitations barred plaintiff's claim because the contract containing the alleged illegal tying provision was entered into more than four years before the complaint was filed).

Construing Plaintiff's pleadings and argument broadly, the Court also considers whether Dr. Joseph alleges or otherwise proves a timely continuing violation that would support his claim. He does not. There must be a "new and independent act that is not merely a reaffirmation of a previous act," and "[that act] must inflict new and accumulating injury on the plaintiff" in order for the continuing violation exception to apply. *Pace Indus.*, 813 F.2d at 237–38. Here, Mr. Joseph asserts in passing that Amazon sent him additional letters similar to the 2008 letter reiterating its POD-policy, but failed to support those assertions with any actual evidence. But even more significantly, Dr. Joseph has not alleged, argued, or otherwise provided evidence to

---

[5] While the Court cannot be certain, it appears that Dr. Joseph believes he is automatically entitled to prevail in this lawsuit because another independent book publisher sued Amazon in 2009 and defeated an initial motion to dismiss. That case, *Booklocker.com v. Amazon*, settled thereafter and never made it to the later stages of litigation. What Dr. Joseph fails to grasp, among other things, is that that lawsuit was brought in 2009, merely one year after Amazon initiated its POD policy. And more fundamentally, he appears not to understand that the plaintiff in that lawsuit sufficiently pleading an unlawful tying arrangement does not mean, therefore, that Dr. Joseph's pleadings—which the Court finds extremely difficult to follow—either state a claim or otherwise alleges a timely claim.

1   demonstrate that he actually succumbed to Amazon's tying arrangement and used BookSurge's

2   POD service in order to maintain access to its direct-sales channel—*i.e.*, he nowhere alleges or

3   proves that Amazon has enforced the alleged tying arrangement against him within the

4   limitations period. *See Eichman*, 880 F.2d at 160 (plaintiff must show that defendant could and

5   did enforce tie against him within the limitations period). Consistent with the absence of such

6   allegations, Dr. Joseph admitted in his own briefing that (i) he "stopped selling or shipping or

7   providing non-POD hardcover and softcover books to Amazon[] or its programs around 2008[,]"

8   and (ii) he "has never sold, shipped, or provided a POD book to Amazon." (Dkt. No. 66 at 8.)

9   Plaintiff has accordingly failed to allege any continuing violation sufficient to sustain this

10   otherwise untimely action. Amazon is entitled to judgment on the pleadings on this claim.[6]

11               **2.      Amazon's Allegedly Unlawful Tying Arrangement**

12               Even if Dr. Joseph's claim was timely, he has failed to properly plead or otherwise

13   support his claim for an unlawful tying violation. "A tying arrangement is a device used by a

14   seller with market power in one product market to extend its market power to a distinct product

15   market." *Rick-Mik Enter, Inc. v. Equilon Enter. LLC*, 532 F.3d 963, 971 (9th Cir. 2008) (quoting

16   *Cascade Health Solutions v. PeaceHealth,* 515 F.3d 883, 912 (9th Cir. 2008)). "To accomplish

17   this objective, the seller conditions the sale of one product (the tying product) on the buyer's

18   purchase of a second product (the tied product)." *Id.* (citations omitted). "Tying arrangements are

19   forbidden on the theory that, if the seller has market power over the tying product, the seller can

20   leverage this market power through tying arrangements to exclude other sellers of the tied

21   product." *Id.* As the Ninth Circuit has made clear, a plaintiff must prove the following for a tying

22   claim to suffer *per se* condemnation: "(1) that the defendant tied together the sale of two distinct

23   products or services; (2) that the defendant possesses enough economic power in the tying

24

25

26       [6] Even assuming Plaintiff's Complaint sufficiently alleged a timely claim, he has offered no evidence to
demonstrate that the alleged tying agreement was enforced against him within the limitations period. Summary
judgment in Defendants' favor would accordingly be appropriate.

1   product market to coerce its customers into purchasing the tied product; and (3) that the tying

2   arrangement affects a 'not insubstantial volume of commerce' in the tied product market." *Id.* at

3   913. Dr. Joseph's allegations and summary judgment briefing is woefully inadequate to warrant

4   a continuation of this lawsuit.

5          First, Dr. Joseph neither alleges nor offers evidence to prove the existence of a

6   sufficiently coercive tying arrangement. "Essential to the second element of a tying claim is

7   proof that the seller *coerced* a buyer to purchase the tied product. A plaintiff must present

8   evidence that the defendant went beyond persuasion and coerced or forced its customer to buy

9   the tied product in order to obtain the tying product." *Paladin Assoc. v. Montana Power Co.*, 328

10  F.3d 1145, 1159 (9th Cir. 2003) (emphasis in original and citations omitted); *see Jefferson*

11  *Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984) ("[T]he essential characteristic of an

12  invalid tying arrangement lies in the seller's exploitation of its control over the tying product to

13  force the buyer into the purchase of a tied product that the buyer either did not want at all, or

14  might have preferred to purchase elsewhere on different terms.").

15         Here, Dr. Joseph expresses great dissatisfaction with Amazon's business practices in the

16  abstract, but as noted above, he nowhere alleges or offers evidence to prove that he was actually

17  forced to purchase BookSurge's POD service. This shortcoming is fatal, as courts and

18  commentators have long recognized that "[a]ctual coercion by the seller that in fact forces the

19  buyer to purchase the tied product is an indispensible element of a tying violation." *Unijax, Inc.*

20  *v. Champion Int'l, Inc.*, 683 F.2d 678, 685 (2nd Cir. 1982); *see Famous Brands, Inc. v. David*

21  *Sherman Corp.*, 814 F.2d 517, 523 (8th Cir. 1987); Areeda, Elhauge, and Hovenkamp, *Antitrust*

22  *Law,* §§ 1753a, 1753f (2d ed. 2004) (explaining that "an express tying contract that is proposed

23  to buyers but rejected by them does not constitute a tie" and that "the mere termination or

24  rejection of a dealer or customer who refuses to comply with a tie" is not unlawful tying). Here,

25  Plaintiff repeatedly asserts that Amazon refused to sell his books directly, but this alone is

26  insufficient to sustain his claim. And as noted above, Dr. Joseph admitted in his own briefing

1    that the alleged tie was never actually enforced against him when he stated that (i) he "stopped

2    selling or shipping or providing non-POD hardcover and softcover books to Amazon[] or its

3    programs around 2008[,]" and (ii) he "has never sold, shipped, or provided a POD book to

4    Amazon." (Dkt. No. 66 at 8.) Regardless of how Dr. Joseph may feel about Amazon's practices

5    as a general matter or the fact that he rejected Amazon's new policy and refused to use

6    BookSurge's POD service, the fact that he never bought BookSurge's POD service to get his

7    books on Amazon is fatal to his claim. *Strawflower Electronics, Inc. v. Radioshack Corp.*, Case

8    No. C05-0747, 2005 WL 2290314, at *8 (N.D. Cal. Sept. 20, 2005) (recognizing that "no tying

9    claim can be stated where the plaintiff refused to purchase the tied product"). Amazon is

10   accordingly entitled to judgment on the pleadings on Dr. Joseph's antitrust claim.

11          Even if that flaw was not dispositive, Dr. Joseph's Complaint itself alleges that Amazon

12   does not actually condition the use of its services—*i.e.*, selling books on its website, directly or

13   otherwise—upon the use of BookSurge POD services. This fact is also sufficient to end

14   Plaintiff's bid against Amazon based on the pleadings.[7] The March 31, 2008 letter that Plaintiff

15   references in his Complaint as the basis for his tying claim demonstrates that booksellers can

16   have their books sold on Amazon "directly" by *either* (a) using the BookSurge POD service; *or*

17   (b) "us[ing] a POD printer for all your units[,] in [which] case, [Amazon] ask[s] that

18   [booksellers] pre-produce a small number of copies of each title (typically five copies), and send

19   those to [Amazon] in advance" so that Amazon can inventory those titles and ship them

20   immediately upon their sale. (Dkt. Nos. 1 at ¶ 9; 66 at 36.) Booksellers are also free to (i) have

21   Amazon sell their books directly by providing hard copies to Amazon beforehand via the

22   Amazon Advantage program or (ii) use the Amazon Marketplace to sell their books directly to

23   consumers using a POD printer of their choice (or no POD printer at all). Because the essence of

24   _____

25          [7] To the extent the Court assumed the sufficiency of Plaintiff's allegations, Defendant would be entitled to
     summary judgment, as Dr. Joseph has failed to offer any actual evidence in the course of summary judgment
26   briefing beyond the same March 31, 2008 letter to support his claim.

a tying claim is a defendant's use of market power in the tying product's market to force the

purchase of a second product on the condition that the tying product will otherwise be withheld,

Plaintiff's claim falls outside the scope of an unlawful tying arrangement. Dr. Joseph has not

alleged that Amazon required booksellers to purchase the BookSurge POD service by refusing to

sell access to its bookselling services unless those entities also used BookSurge.[8] *See Paladin*,

328 F.3d at 1159 ("mere sales pressure" does not constitute coercion).

### D.   Plaintiff's State-Law Defamation and Libel Claims are Barred by Section 230 of the CDA

The Court next addresses Plaintiff's "libel/defamation/slander/trade libel" claim. As the

Court understands the Complaint, Plaintiff alleges that Amazon unlawfully published defamatory

anonymous reviews of Plaintiff's books (and Plaintiff) on its website. (Dkt. No. 1 at ¶¶ 58–82.)

Amazon argues in its opposition and cross-motion that Dr. Joseph's claim fails as a matter of law

because (i) Amazon is protected from liability under the Communications Decency Act of 1996,

47 U.S.C. § 230, for statements made by reviewers on its website; and (2) the alleged statements

are all matters of opinion and are thus not actionable. (Dkt. No. 60 at 18.) Upon review, the

Court agrees that Section 230 immunity bars Dr. Joseph's claim against Defendants. Amazon

---

[8] At most, Plaintiff has highlighted the fact that Amazon offers a type of "bundled discount" or incentive to booksellers who use its BookSurge service rather than other POD services. It does so, effectively, by allowing booksellers to have Amazon re-sell their books *without* having to provide five hard copies to Amazon up front if they use the BookSurge POD service, whereas the use of another POD service requires those hard copies to be sent to Amazon before the books will be listed. As the Ninth Circuit and other courts have explained, "[s]tanding alone, the fact that a customer would end up paying higher prices to purchase the tied products separately" is not sufficient to demonstrate coercion. *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 915 (9th Cir. 2008) (citation omitted)). To sufficiently demonstrate "coercion" in these circumstances, a plaintiff must provide evidence to show that only a "trivial proportion" of sales are made separately; if proven, the fact that the two products are rarely, if ever, sold separately "shows that the package discount is as effective as an outright refusal to sell [the tying product] separately." *Cascade Health Solutions*, 515 F.3d at 915 (citing 10 Areeda & Hovenkamp, *supra*, ¶ 1758b at 327 (2d ed. 2004)). Here, Dr. Joseph neither alleges nor offers evidence to demonstrate that Amazon's book sales service and BookSurge POD service are only sold separately in "trivial" amounts. Because he has done no more than allege and offer evidence that it is somewhat cheaper to use Amazon's bookstore if the publisher also uses BookSurge to print POD titles, his claim necessarily fails. *See, e.g., Aerotec Intern., Inc. v. Honeywell Intern., Inc.*, --- F.Supp.2d --- -, 2014 WL 1017914, at *4–6 (D. Ariz. 2014) (concluding that no illegal tying arrangement existed where defendant offered bundled products at a discount because the products were available separately and no other evidence of coercion supported existence of tying arrangement).

and Mr. Bezos are entitled to judgment on the pleadings on this claim, or in the alternative, summary judgment.

Section 230 of the Communications Decency Act ("CDA") "immunizes providers of interactive computer services against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc); *Carafano v. Metrosplash.com*, 339 F.3d 1119, 1122 (9th Cir. 2003). The statute provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Ultimately, a defendant is entitled to § 230 protection as long as (1) it is a provider or user of an "interactive computer service," (2) the asserted claims "treat the defendant as a publisher or speaker of information," and (3) the challenged communication is "information provided by another content provider." *Batzel v. Smith*, 333 F.3d 1018, 1037 (9th Cir. 2003).

Amazon is entitled to § 230's protection from Plaintiff's defamation/libel/slander/trade libel claim. Amazon constitutes an "interactive service provider," which the CDA defines as a provider of an information service or system that "enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2); *see Corbis Corp. v. Amazon.com, Inc.*, 351 F.Supp.2d 1090, 1118 (W.D. Wash. 2004) (no dispute that Amazon is an interactive service provider for CDA purposes); *Schneider v. Amazon*, 108 Wn.App. 454, 463 (Wash. 2001) (finding Amazon to be an interactive service provider and entitled to immunity from claims based on defamatory reviews by third parties). Plaintiff's Complaint alleges that Amazon operates a website that allows consumers to purchase items online, *i.e.*, to access Amazon's servers by placing orders and browsing its online store. (*See* Dkt. No. 1 at ¶ 5.) Second, Dr. Joseph's claim, whether labeled as a defamation, libel, slander or trade libel cause of action, faults Amazon for acting as the publisher of the reviews. (*See*, *e.g.*, Dkt. Nos. 1 at ¶ 60 ("Amazon published, copyrighted and claimed ownership" of the allegedly libelous statements); 43 at ¶ 85 ("The above are just a few examples of anonymous[,] defamatory, libelous reviews published by the Defendants."). The

CDA's express terms preclude him from treating Amazon as a publisher or speaker of the information at issue, which is necessary for his state-law claims to succeed. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101 (9th Cir. 2009) (recognizing that "the cause of action most frequently associated with the cases on section 230 is defamation[,]" but explaining that the statute's protection extends beyond defamation causes of action); *Kimzey v. Yelp Inc.*, --- F.Supp.2d ---, 2014 WL 1805551 (W.D. Wash. 2014) (unfair business practices, malicious libel, and libel per se claims barred against website that allowed users to post reviews of businesses). Finally, the statements alleged were made by third-party reviewers commenting on Dr. Joseph's books and videos, and Dr. Joseph himself. (*See generally* Dkt. Nos. 1 at ¶¶ 25–26, 60; 43 at ¶ 85.)  They accordingly constitute "information provided by another content provider" under the CDA's terms. *See* 47 U.S.C. § 230(f)(3) (defining "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."). In sum, Plaintiff's claim against Amazon is barred under § 230 of the CDA.

Dr. Joseph counters this inevitable conclusion with a number of arguments. First, he alleges and argues that the CDA does not apply because Amazon makes "editorial" decisions about which product reviews to publish and which to delete. (Dkt. No. 1 at ¶ 71.B.) This argument is without merit. The Ninth Circuit has made clear that such editorial acts (even assuming they are true) are protected: "[S]o long as a third-party willingly provides the essential published content, the interactive services provider receives full immunity regardless of the specific editing or selection process." *Carofano*, 339 F.3d at 1124. Whether the website operator removes certain reviews, publishes others, or alters the content, it is still entitled to CDA immunity, since those activities constitute a publisher's traditional editorial functions. *Roommates.com*, 521 F.3d at 1179–80 ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."). It is no surprise then that Courts have repeatedly barred similar claims against

1   websites that allow anonymous reviews or other allegedly defamatory content to be posted by

2   third parties. *See*, *e.g.*, *id.*; *Black v. Google Inc.,* 457 Fed. Appx. 622 (9th Cir. 2011)

3   (unpublished) (Google not liable for anonymous negative business reviews posted in its online

4   business directory); *Kimzey*, 2014 WL 1805551, at *2–3 (Yelp! website entitled to CDA

5   immunity from claims based on reviews posted on its site).

6          Dr. Joseph also argues that Amazon is the "owner" of statements because it "copyrights"

7   them after they are posted. As Defendants' point out, this argument appears to be factually

8   incorrect—Amazon's standard Conditions of Use expressly state that customers posting reviews

9   own the content and merely grant Amazon a license to use it—and in any event, is unpersuasive

10  as a legal argument because Dr. Joseph still alleges nothing more than Amazon's fault for

11  *publishing* content first created and posted by third-parties. On a different note, Plaintiff argues

12  that CDA cannot apply because the reviews make defamatory statements about him as a person

13  rather than about his books. Such an argument is without merit. The essential elements of CDA

14  immunity do not turn on the substance of the alleged statements, but rather, on the party who is

15  allegedly liable for them and whether that party must be deemed a "publisher" to incur liability.

16  *See*, *e.g.*, *Gavra v. Google Inc.*, Case No. C12-6547, 2013 WL 3788241, at *2–3 (N.D. Cal. July

17  17, 2013) (claims based on allegedly defamatory videos about other individuals posted on

18  YouTube barred under § 230).

19         Finally, Dr. Joseph implies that the individuals who posted the allegedly defamatory and

20  libelous statements about him online were "directly associated with the Defendants and *may be*

21  an employee of Amazon." (Dkt. No. 1 at ¶ 71.C.) This argument fails for a number of reasons.

22  First, Dr. Joseph's Complaint itself contains insufficient allegations to support a conclusion that

23  Amazon authored any content. Plaintiff relies on nothing more than "mere speculation" to allege

24  that some unidentified Amazon employee might have authored the negative commentary about

25  him without explaining why or how that might be the case. Such allegations are wholly

26  insufficient to avoid § 230's reach. *See*, *e.g.*, *Levitt v. Yelp! Inc.*, Case No. C10-1321, 2011 WL

1   5079526, at *2 (N.D. Cal. Oct. 26, 2011) (rejecting similarly speculative assertions that

2   unidentified Yelp employees authored allegedly defamatory reviews). Additionally, even if the

3   Court accepted this conclusory allegation as sufficient, summary judgment against Plaintiff

4   would be warranted because he provides absolutely no evidence to support his assertion that any

5   Amazon employee posted the reviews at issue. On the other hand, Amazon has provided a sworn

6   declaration clarifying that Amazon neither creates nor controls the content of any third-party

7   reviews, except that it reserves the right to delete reviews that violate its published policies. (Dkt.

8   No. 62 at ¶ 3.) That alone would be sufficient to justify summary judgment for Amazon.

9          In sum, the Court concludes that Amazon is entitled to § 230 immunity for Plaintiff's

10  "libel/defamation/slander/trade libel" claim.

11          **E.      Plaintiff's Breach of Contract / "Bait and Switch" Claim**

12          Plaintiff also asserts what appears to be a breach of contract claim.[9] Under the Amazon

13  Associate program, publishers and authors can advertise their books on their own websites and

14  use "special links" to direct customers to Amazon's website, where they can then purchase the

15  book. (*See* Dkt. No. 66 at 29.) Amazon is obligated to pay a fee to the author or publisher when

16  said book is sold. According to Plaintiff, Amazon has deleted the special link tags after

17  customers have clicked on his website's links and been forwarded to Amazon's website, and has

18  subsequently redirected customers to other products so as to avoid paying referral fees. (*Id.*) Dr.

19  Joseph also alleges that Amazon improperly lists his books as "unavailable" to avoid paying

20  referral fees. (*Id.*) In response, Amazon provides the declaration of one of its Associates Program

21  enforcement managers. That individual provided the applicable Associates Operating Agreement

22  _____

23          [9] Dr. Joseph also frames this claim as a "bait and switch" scheme. The alleged conduct, however—
            Amazon's alleged removal of special link tags—is not a "bait and switch" scheme against Dr. Joseph, as he nowhere

24  alleges that Amazon advertised a product to him at a low price for no purpose other than to dupe him into
            purchasing a higher-priced item. *See Walker v. Wenatchee Valley Truck and Auto Out, Inc.*, 155 Wash. App. 199,

25  215 (Wash. App. 2010) ("Bait and switch describes an offer which is made not in order to sell the advertised product
            at the advertised price, but rather to draw a customer to the store to sell him another similar product which is more

26  profitable to the advertiser."). His claim is thus without merit insofar as he intends to bring a bait and switch claim
            under Washington law.

and explained that (i) under the terms of that agreement, it is the associate's responsibility to properly format links to the Amazon website by using the appropriate special "tagged" link format; (ii) Amazon has no responsibility under the terms of the Operating Agreement to pay referral fees for linked purchases that did not contain the appropriate tagged format; (iii) that Amazon's referral payments are calculated and paid automatically; and (iv) that Amazon does not alter or change referral links on outside associate's website in any way. (Dkt. No. 63.) Amazon also points out in a sworn declaration that a review of Dr. Joseph's website indicates that numerous links are improperly formatted, which under the terms of the agreement, would result in non-payment of referral fees even if a customer clicked through the link and made a qualifying purchase. (*Id.*) Finally, Amazon offers sworn testimony to the effect that according to its records, Dr. Joseph has been paid for all qualifying purchases under the Associates program, including $2,678.45 in advertising fees for 1,971 qualifying purchases. (*Id.* at ¶ 8.)

Amazon is entitled to summary judgment on this claim. It has offered evidence to support its argument that it has not breached the applicable operating agreement and that it has paid Dr. Joseph for all qualifying purchases. In his opposition, Dr. Joseph nowhere addresses these facts and merely argues that Amazon has committed fraud by engaging in the alleged conduct. Nor does he identify a single example of Amazon's failure to pay him for a qualifying referral and fails to offer evidence to support such any such finding. (*See* Dkt. No. 66 at 26, 29.) Absent supporting evidence or, at a minimum, some specificity regarding Amazon's alleged breaches, the Court cannot conclude that any material facts are genuinely in dispute.

### F.    Plaintiff's Remaining Claims for Fraud, Malice, Personal Injury

Plaintiff also attempts to bring claims for "malice, oppression, fraud" and personal injury. To the extent Plaintiff's claims rely on statutory or regulatory provisions that do not provide private causes of action, the Court grants Defendants' motion for judgment on the pleadings. (*See* Dkt. No. 1 at ¶¶ 84, 90, 97.) Insofar as Dr. Joseph labels his allegations as a "fraud" claim, the Court views them as a mere re-hashing of the claims already addressed herein. Notably, in

1    his Complaint and motion papers, Plaintiff makes no attempt to cite and apply the appropriate

2    state law governing a fraud claim. Nonetheless, the Court has reviewed his allegations and

3    concludes that the Complaint utterly fails to allege with the requisite specificity the elements of a

4    fraud claim under Washington law. *See* Fed. R. Civ. P. 9(b) (party must "state with particularity

5    the circumstances constituting fraud" in alleging a fraud claim); *Stiley v. Block,* 925 P.2d 194,

6    204 (Wash. 1996) (fraud plaintiff must prove by clear, cogent, and convincing evidence the

7    following elements to make out a fraud claim: "(1) representation of an existing fact; (2)

8    materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it

9    should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's

10   reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages

11   suffered by the plaintiff."). Here, Dr. Joseph nowhere alleges that Amazon made a material

12   representation to him that he had right to and did rely upon to his detriment; instead, he merely

13   asserts that Amazon wrongfully stated (to the public) that his books were not available for

14   shipping on its website. Even if true, that repeated assertion does not sufficiently allege, with

15   particularity, how Amazon defrauded Dr. Joseph by misrepresenting an existing fact that he

16   relied upon. Amazon is accordingly entitled to judgment on the pleadings.

17          Finally, the Court grants Defendants judgment on the pleadings with regard to Plaintiff's

18   "personal injury" claim. It is unclear what claim Plaintiff actually seeks to assert, but the Court

19   agrees with Defendants that this claim can fairly be viewed as an "intentional infliction of

20   emotional distress" cause of action. To prevail on such a claim, a plaintiff must prove that (1) a

21   defendant engaged in "extreme and outrageous conduct," (2) the defendant intentionally or

22   recklessly inflicted emotional distress on the plaintiff, and (3) defendant's actions actually

23   resulted in severe emotional distress. *Kloepfel v. Bokor*, 149 Wash.2d 192, 195–96, 66 P.3d 630

24   (2003) (citing *Reid v. Pierce Cnty.*, 136 Wash.2d 195, 202 (1998)). "Any claim of outrage must

25   be predicated on behavior so outrageous in character, and so extreme in degree, as to go beyond

26   all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

ORDER
PAGE - 18

1   civilized society." *Strong v. Terrell*, 147 Wash. App. 376, 385 (Wash. App. 2008) (citation

2   omitted). Here, Dr. Joseph has alleged noting that could fairly be deemed sufficiently outrageous

3   to support a claim of intentional infliction of emotional distress. Defendants are entitled to

4   judgment on the pleadings on this claim.

5          **G.      Plaintiff's Rule 56(d) Request for Additional Discovery**

6          Notwithstanding the fact that he moved for summary judgment on his antitrust and

7   defamation/libel claims and argued that "discovery is not essential and need not be completed"

8   before granting summary judgment in his favor, Dr. Joseph requested in his opposition to

9   Defendants' cross-motion that he be permitted to take additional discovery before Amazon's

10  motion is granted. Federal Rule of Civil Procedure 56(d) authorizes the Court to defer ruling on a

11  summary judgment motion and instead authorize the non-moving party to conduct additional

12  discovery necessary to oppose the motion. In making a Rule 56(d) request, a party must "make

13  clear what information is sought and how it would preclude summary judgment," *Garrett v. City

14  and Cnty. of San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1998), and such a request must be

15  supported by factual allegations. "Wild speculation" about facts that may be learned in discovery

16  is not sufficient. *Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998).

17         The Court denies Dr. Joseph's request. As an initial matter, the Court has determined that

18  Amazon is entitled to judgment on the pleadings on each of its claims other than the breach of

19  contract claim. It is thus unnecessary to consider whether additional discovery is warranted, for

20  Plaintiff's Complaint does not even allege facts that, if true, would state a claim. Insofar as

21  Plaintiff wishes to amend his Complaint, the Court denies the request. A review of the facts that

22  Dr. Joseph did allege, which the Court has addressed herein, demonstrates that amendment

23  would be futile. The addition of factual allegations would not save his claims that are barred as a

24  matter of law.

25         To the extent the Court has determined that summary judgment is warranted in Amazon's

26  favor—namely, on Plaintiff's breach of contract claim—Dr. Joseph's Rule 56(d) request still

1  strikes the Court as nothing more than an attempt to engage in widespread, harassing, and

2  unnecessary discovery. Dr. Joseph submitted an affidavit to support his request (Dkt. No. 69),

3  along with numerous other filings and motions requesting discovery and the deposition of Jeff

4  Bezos. (*See* Dkt. Nos. 53–58.) The affidavit does not set forth with any specificity the relevant,

5  non-speculative discovery sought or how such information would actually preclude summary

6  judgment on any claim, much less the breach of contract claim addressed herein. As a practical

7  matter, Dr. Joseph's affidavit is little more than an extended rant about Dr. Joseph's personal

8  dislike of Mr. Bezos. (*See, e.g.*, Dkt. No. 69 at ¶ 59 ("Jeff Bezos is the typical bully, who enjoys

9  instilling fear and panic in his managers and employees and who attacks those who he believes

10 are weak and vulnerable . . . Bezos is vile, vicious, malicious. . . it can be deduced that Bezos

11 suffers from significant emotional and psychological problems which are probably related to his

12 delicate build and very tiny size and the fact that his biological father rejected and abandoned

13 him[.]"). While the Court is aware that it should normally grant Rule 56(d) requests "fairly

14 freely" when a summary judgment motion is filed before the non-moving party has had a

15 realistic opportunity to conduct discovery related to its theory of the case*, Burlington Northern

16 Santa Fe R. Co. v. The Assiniboine*, 323 F.3d 767, 774 (9th Cir. 2003), the Court denies

17 Plaintiff's request because he has not complied with Rule 56(d)'s requirements and because

18 allowing discovery in this matter would be fruitless. *Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir.

19 2004); *see Roberts v. McAfee, Inc.,* 660 F.3d 1156, 1169 (9th Cir. 2011) (holding that failure to

20 comply with the requirements of Rule 56(d) is a proper ground for denying relief); *Tatum v. City

21 and Cnty. of San Francisco*, 441 F.3d 1090, 1100-1101 (9th Cir. 2006) (denying Rule 56(d)

22 request where affidavit did not specify the discovery sought and how that information would

23 preclude summary judgment).

## III.  <u>CONCLUSION</u>

25        For the foregoing reasons, Defendants' motion for judgment on the pleadings and/or

26 summary judgment (Dkt. No. 60) is GRANTED and Plaintiff's motion for summary judgment is

1   DENIED. (Dkt. No. 43.) In light of this ruling, the Court declines to consider Plaintiff's

2   additional motions to compel discovery (Dkt. Nos. 53, 57) or Defendants' motion for a

3   protective order (Dkt. No. 70) and DENIES those motions as moot. The Court will enter

4   judgment accordingly, and the Clerk is respectfully directed to CLOSE this case.

5           DATED this 28th day of August 2014.

6

7

8

9

10

11          _____

12          John C. Coughenour
            UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
PAGE - 21